UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | |
|---|---|
| DARA KAPLAN, | COMPLAINT |
| Plaintiff, | Case No.: 1:23-CV-1236 (FJS/CFH) |
| - against – | JURY TRIAL DEMANDED |
| MARLBORO CENTRAL SCHOOL DISTRICT, MICHAEL M. BROOKS, individually and in his capacity as Superintendent of Schools of the MARLBORO CENTRAL SCHOOL DISTRICT, and PATRICIA WALSH, individually and in her capacity as Principal of the Marlboro Elementary School, | |
| Defendants. | |

-----------------------------------------------------------x

Plaintiff, DARA KAPLAN, by her attorneys, GOULD & BERG, LLP, states the following for her Complaint:

## INTRODUCTION

1. Plaintiff commences this action pursuant to Title VII, 42 U.S.C., §2000-e et seq. seeking damages for engaging in adverse employment against her on account of her religion and in retaliation against her for having made a good faith complaint of harassment and/or discrimination on the basis of religion, and pursuant to 42 U.S.C. §1983 seeking damages for a violation of her rights under the Fourth Amendment to the Constitution of the United States by engaging in a malicious baseless criminal prosecution of Plaintiff, inter alia, on account of her religion and in retaliation for having made a good faith complaint of discrimination on account of her religion.  Plaintiff also asserts related state law claims pursuant to Sections 292 and 296 et

1

seq. of the New York State Executive Law (the New York State Human Rights Law or "NYSHRL").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action involves federal questions, as set forth above and below. As to Plaintiff's supplemental state law claims, the Court's jurisdiction is invoked pursuant to 28 U.S.C. §1367.

3. Venue properly lies in the United States District Court for the Northern District of New York, pursuant to 28 U.S.C. § 1391, because the primary unlawful conduct occurred in a school district located within Ulster County, New York.

## THE PARTIES

4. Defendant MARLBORO CENTRAL SCHOOL DISTRICT ("the "District) is a School District, created under and existing by virtue of the laws of the State of New York and is located in Marlboro, Ulster County, New York

5. At all times relevant hereto, Defendant MICHAEL M. BROOKS ("Brooks") served as Superintendent of Schools of the Defendant District.

6. At times relevant hereto, Defendant PATRICIA WALSH ("Walsh") was principal of the Marlboro Elementary School, the sole elementary school within said District.

7. Plaintiff, DARA KAPLAN, ("Kaplan" or "Plaintiff) is a resident of Rock Hill, Sullivan County, New York and is a member of, and practices, the Jewish faith.

8. From January 2018 through January 4, 2022, Plaintiff was employed by the District as a tenure track Assistant Principal of the Marlboro Elementary School.

**PLAINTFF'S EMPLOYMENT HISTORY**

9. Prior to her employment with the District, Plaintiff was granted tenure as a teacher in three different School Districts in New York State.

10. In each year of Plaintiff's employment in the District prior to her termination on January 4, 2022, her annual evaluations as Assistant Principal rated her "Highly Effective."

11. Plaintiff was terminated by the District on January 4, 2022, immediately before the date of her anticipated achievement of tenure.

**BACKGROUND: DEFENDANTS WALSH AND BROOKS**

12. Upon information and belief, at the time of the events giving rise to this action, although she had been a principal for many years, Walsh was on her second Performance Improvement Plan in her role as Principal of the Marlboro Elementary School.

13. Upon information and belief, prior to the events giving rise to this action, as a result of her behavior, Walsh had been directed by the District to appear for approximately three psychiatric examinations

14. Upon information and belief, subsequent to Plaintiff's January 4, 2022 termination, and at the end of the 2021-2022 school year, Walsh was placed on "administrative leave" until at least October 3, 2022.

15. Upon information and belief, Walsh was brought back to the District on or about October 3, 2022 and was assigned to what is commonly known in education parlance as a "rubber room.," i.e., to a role in which she did not perform the duties of principal or the duties of any other pedagogical role, although she was fully paid.

16. Upon information and belief, Walsh was advised that she would be so assigned

at least until March 2023.

17. By Notice of Petition and Petition filed February 2, 2023, counsel on behalf of Walsh commenced an Article 78 against the District in Supreme Court, Ulster County (Index # 2023-270), challenging the foregoing rubber room assignment.

18. A Stipulation of Discontinuance of that proceeding was filed on August 25, 2023.

19. Upon information and belief, notwithstanding her job performance issues, Walsh was carried on the District payroll until she could retire and upon information and belief, she did retire with full retirement benefits prior to the filing of the Stipulation of Discontinuance as described above.

20. Defendant Books retired as Superintendent of Schools – also in August 2023.

## THE FACTS GIVING RISE TO THIS ACTION

21. On November 19, 2021, Plaintiff was directed to attend a meeting with Superintendent Brooks on November 22, 2021.

22. Plaintiff was advised that the meeting might lead to discipline and therefore attended the meeting with her Union representative(s).

23. During the November 22, 2021 meeting, the Superintendent questioned Plaintiff about disparaging statements that Plaintiff had allegedly made about Walsh, which statements Plaintiff denied.

24. Discipline was not mentioned in that meeting and the issue of Plaintiff's appointment on tenure which was expected to occur in January 2022, was not discussed

25. On November 23, 2021, one day after the foregoing meeting with Brooks, Plaintiff received an email on her school computer from Walsh's email address stating

### "Got that Jew bitch.  Brooks was here."

26.  Plaintiff was shocked and deeply offended by the foregoing email which she believed then, and continues to believe, came from Patricia Walsh and referred to the meeting Plaintiff had the day before with Brooks in which she was questioned about, and denied, disparaging statements she allegedly made about Walsh.

27. On that same day, November 23, 2021, Plaintiff called Brooks to request a meeting to document and complain about the receipt of the foregoing email which was clearly an anti-Semitic slur against her.

28. Brooks responded by asking "Are you sure want to do this?" and advised Plaintiff  "I think you should go home and think about it."

29. Kaplan demanded to meet Brooks to document her complaint that day.

30. Brooks assigned Assistant District Superintendent Michael Bakatsias, who was also the District's Title IX officer, to investigate Plaintiff's Complaint.

31. During the course of the investigation, Plaintiff was interviewed and was asked about other instances of anti-Semitism and responded by describing other such instances, one of which involved Principal Walsh.

32. During the course of the investigation, notwithstanding that the foregoing anti-Semitic email came Walsh's IP address at her work station, Walsh falsely denied that she sent the anti-Semitic email although she admitted that her computer was left unlocked in violation of District policy for the period of time before and after the time stamp on the email.

33.  No action was taken against Walsh for that violation of District policy.

34. On December 2, 2021, Brooks contacted the New York State Police in Highland, New York regarding what he described to the State Police, as the "possible commission of the

5

offense of unauthorized use of a computer" by Plaintiff Dara Kaplan.

35. Upon information and belief, incredibly, Brooks advised the State Police who responded to the District on December 2, 2021 that he was investigating a complaint against Plaintiff which could result in the denial of tenure and possible termination and that soon after the meeting in which Plaintiff was so advised of the possible tenure denial and termination, Brooks received correspondence from plaintiff's Union representative regarding receipt of the foregoing offensive anti-Semitic email, indicating that Kaplan did not believe the email was meant to be sent to her and that it seemed to refer to the meeting Brooks had had with Plaintiff the day before in which reference was made to negative statements about Walsh which were allegedly made by Plaintiff.

36. Neither tenure nor termination were discussed in the November 22, 2021 meeting between Brooks and Plaintiff.

37. On December 3, 2021 Plaintiff was directed to work from home.

38. Walsh continued to remain in her position as Principal of the Marlboro Elementary School.

39. At some time between December 3, 2021 and December 14, 2021, Assistant Superintendent Bakatsias advised Plaintiff that the investigation he was conducting was "out of his control" and that Superintendent Brooks was directing the findings of the investigation

40. By letter dated December 14, 2021, Brooks advised Plaintiff that she would not receive tenure.

41. By letter dated December 21, 2021, in response to Plaintiff's request for the reasons for denial of tenure, all reasons except one related to disparaging statements that Plaintiff had denied making about Defendant Walsh and Plaintiff's alleged lack of truthfulness in response

6

to one question she was asked in the November 22 meeting about the length of a phone conversation with a particular teacher.

42. The final alleged reason for the denial of tenure as set forth in the December 21, 2021 letter was

> Since the summer of 2021 there has been a "loss of trust and faith" by the faculty [of the Elementary School] and while it was not all [Kaplan's] fault, "a large part is attributed to [Kaplan']s management style.

43. Prior the foregoing December 21, 2021 letter and prior to her complaint regarding the anti-Semitic email, neither Brooks nor any other employee of the District informed Plaintiff of any issues with respect to her management style or mentioned any other criticisms of her performance.

44. Principal Walsh, on the other hand was subject to her second Performance Improvement Plan, and, as set forth below, was ultimately removed from her duties

45. Bakatsias's investigation, as well as the investigation of the source of the anti-Semitic email conducted by the State Police established that no one in the vicinity of Walsh's office saw Plaintiff in Walsh's office on the day and at the time the anti-Semitic the email was sent.

46. On December 22, 2021 Plaintiff received Bakatsias's investigation report which determined that Walsh did not send the email (because she denied that she had done so and because she was allegedly not in her office at the time the email it was sent) and concluded that the identity of the individual who did send it was inconclusive.

47. The Bakatsias determination however, without a scintilla of proof, implied, though did not directly state, that Plaintiff, a person of the Jewish faith, had sent the anti-Semitic email to herself.

48. The District terminated Plaintiff's employment on January 4, 2022.

49. At the time of Plaintiff's termination her annual salary was $107,000.00 plus benefits including family health insurance for her husband and three children.

50. Plaintiff immediately began an attempt to mitigate her damages and on January 13, 2022, she was offered the position of Elementary School Principal in the Hyde Park School District

51. The compensation for the Hyde Park position was $132,000.

52. That offer of employment was rescinded on January 24, 2022.

53. Upon information and belief, the Hyde Park offer was rescinded because an employee or employees of the Defendant District gratuitously contacted the Hyde Park School District and disparaged Plaintiff.

54. Again in an attempt to mitigate her damages, in February 2022, Plaintiff commenced employment as Assistant Principal at Green Chimneys School at an annual salary of $90,000.

55. Prior to commencement of her employment, Plaintiff informed Green Chimneys of the circumstances of her termination from Marlboro.

56. On February 16, 2022, Plaintiff's counsel filed a charge of discrimination on the basis of religion and retaliation with the United States Equal Employment Opportunity Commission (EEOC Charge #520-2022).           .

57. On or about February 16, 2022, counsel of behalf of Plaintiff served a Notice of Claim upon the District, alleging, inter alia, discrimination and retaliation.

57(a) More than 30 days have elapsed and the claim has not been adjusted.

58. On February 28, 2022, after being notified that she was being charged with the

crime of unauthorized use of a computer, in violation of New York State Penal Law §156.05, a Class A Misdemeanor, Plaintiff surrendered herself to the headquarters of New York State Police in Highland, New York.

59. The charge was set forth in an Information signed by State Police Investigator Gregory Maxwell.

60. The basis for the Information was the Supporting Deposition referred to therein which was signed by Defendant Brooks.

61. In that supporting deposition, Brooks falsely swore in relevant part:

> After an exhaustive investigation it was concluded the school's determination and my own that the only person that had access to Pattie's (Patricia Walsh) work account, which includes email was Dara Kaplan. This was made by reviewing videos and interviews of personnel that were present in the vicinity and others that came forward to provide their testimony regarding this incident. Dara Kaplan was facing disciplinary action in an unrelated matter that could have and did lead to her termination. The only one with that knowledge that had access to Patti's email also was Dara Kaplan.

62. The foregoing sworn statement by Brooks which formed the basis of the arrest and ultimately a year-long prosecution of Plaintiff was knowingly false in that the District's own internal written investigation report determined that the identity of the person who sent the anti-Semitic email was inconclusive.

63. Moreover, when he signed that Supporting Deposition, Brooks was well aware that there was no witness who was interviewed during the District's investigation or during the State Police investigation who saw Plaintiff in Walsh's office at the time the anti-Semitic email was sent.

64. In his supporting deposition, Brooks maliciously stated:

> As a representative of the School District, I wish to pursue any and all criminal charges against Dara Kaplan for the unauthorized use of Patirica Walsh's account which included her work email account."

9

65. Although Plaintiff surrendered herself to authorities, at the time of surrender, she was handcuffed and placed in leg irons.

66. By signing and falsely swearing to the Supporting Deposition as described above, Defendant Brooks initiated the criminal proceeding and caused Plaintiff to be seized and prosecuted without probable cause in that, *inter alia*, Brooks had no good reason to believe that criminal prosecution was justified by the facts and the law.

67. The criminal proceeding was initiated by Brooks with malice and for a purpose other than bringing Plaintiff to justice.

68. When her then employer Green Chimneys learned of the arrest, Plaintiff was asked to and did resign from that position.

69. Plaintiff retained counsel to represent her in the criminal matter and to aid in her defense and at the suggestion of counsel, retained an investigator.

70. Over the course of the ensuing year and until February 14, 2023, Plaintiff was subject to the jurisdiction of the Town Court of the Town of Marlboro and her liberty was restricted in that, in addition to be detained in handcuffs and leg irons, she was compelled to appear in the that Court on approximately ten (10) occasions.

71. The room which was utilized as a courtroom by the Marlboro Town Court was the very same room in which the District's Board of Education regularly met and in which Plaintiff during the course of her employment made numerous presentations to that Board.

72. Plaintiff was accordingly constantly humiliated by her appearances in Court.

73. Although the prosecution consistently claimed that there was camera footage in possession of the District showing that Plaintiff was "in the vicinity" of Walsh's office at the

time the offensive email was sent, that footage could never be "opened" during the course of the criminal prosecution.

74. Finally, after the criminal matter was pending for almost a year, the Marlboro Town Court dismissed the case against Plaintiff on February 14, 2023.

75. The criminal proceeding ended without a conviction and was resolved in Plaintiff's favor.

76. In defense of the foregoing bogus and malicious criminal case, Plaintiff expended substantial sums in attorneys' fees, including the costs of an investigator.

77. While Plaintiff had full health benefits for herself and her family during her employment with the District, she has, since the termination of that employment, been forced to pay the entire cost of family medical coverage.                               .

78. Plaintiff had three offers of employment since her termination from the District including an offer from Dutchess County BOCES. which were rescinded or terminated upon information and belief, due to the interference and gratuitous damaging information provided by the District and/or due to learning of the criminal proceeding even after it had been dismissed.

79. Plaintiff did not work, except for a few days, from her termination on January 4, 2022 until August 2023 when she was hired by a private school as an Assistant Principal and teacher at a significantly lower salary than her earnings in Marlboro and with no benefits.

80. In addition to the foregoing, notwithstanding that the criminal charges commenced and continued by the District and Brooks were knowingly false, malicious, and bogus, and were dismissed, Brooks filed what is known as a Part 83 Complaint against Plaintiff with the New York State Department of Education, falsely claiming that Plaintiff's moral fitness as an educator is in question.

81. By reason of that complaint Plaintiff's state certification as an administrator is "on hold."

82. Further and most recently, the District falsely reported to the New York State Department of Education that Plaintiff's position in the District was as a "principal's assistant" rather than an Assistant Principal so that her service as Assistant Principal for almost four years has not been counted toward her certification as a school administrator and therefore, she is unable to obtain her certification as such.

### AS AND FOR A FIRST CLAIM AGAINST THE DISTRICT: DISCRIMINATION IN THE TERMS AND CONDITIONS OF EMPLOYMENT ON THE BASIS OF RELIGION IN IN VIOLATION OF TITLE VII

83. Plaintiff repeats and realleges Paragraphs 1 through 82 above as though set forth herein.

84. The United States Equal Employment Opportunity Commission issued a Notice of Right to Sue on July 30, 2023.

85. The foregoing adverse employment actions undertaken by the District and Brooks in a) denying Plaintiff tenure, b) terminating her employment, c) deliberately interfering with other employment opportunities, d) commencing and continuing a knowingly false criminal charge against Plaintiff without probable cause, e) making a Part 83 Complaint of moral unfitness against Plaintiff to the New York State Education Department, causing her administrative certification to be "on hold" and f) deliberately misstating Plaintiff's District job duties to the New York State Education Department, also causing her administrative certification to be denied, were undertaken against Plaintiff on account of her religion, in violation of Title VII, 42 U.S.C. §2000-e et sq.

86. By reason of the foregoing, Plaintiff has sustained financial loss, severe humiliation, pain, suffering, mental anguish, emotional distress and loss to reputation.

87. By reason of the foregoing Plaintiff has been damaged in a sum to be determined at trial but in no event less than THREE MILLION DOLLARS ($3,000,000.00).

**AS AND FOR A SECOND CLAIM AGAINST ALL DEFENDANTS: DISCRIMINATION IN THE TERMS AND CONDITIONS OF EMPLOYMENT ON THE BASIS OF RELIGION IN IN VIOLATION OF SECTION 296 ET SEQ. OF THE EXECUTIVE LAW (NEW YORK STATE HUMAN RIGHTS LAW)**

88. Plaintiff repeats and realleges Paragraphs 1 through 87 above as though set forth herein.

89. Pursuant to New York Law, a School District's Board of Education is precluded from granting an administrator tenure in the absence of a recommendation therefor from the District Superintendent.

90. In order to achieve tenure, an administrator such as Plaintiff must have the recommendation of her principal.

91. Defendant Brooks failed and refused to recommend Plaintiff for appointment on tenure.

92. Principal Walsh failed and refused to recommend Plaintiff for appointment on tenure.

93. Further, Defendants Superintendent Brooks and Principal Defendant Walsh concocted a bogus scenario setting the stage for a basis to deny Plaintiff appointment on tenure notwithstanding her qualifications therefor, by, inter alia, soliciting and/or communicating false complaints about Plaintiff and/or by falsely claiming that Plaintiff had made disparaging remarks about Walsh and then by falsely claiming that the elementary school faculty lost trust

13

in the school administration, in large part because of Plaintiff leadership style, when in fact it was Walsh's dysfunctional performance which was the cause of that loss of the trust and which led ultimately to Walsh's final career assignment to the "rubber room," rather than to her duties as elementary school principal.

94. By undertaking the foregoing adverse employment actions in a) declining to recommend Plaintiff for tenure and thereby causing Plaintiff to be denied tenure, b) terminating her employment, c) deliberately interfering with other employment opportunities, d) commencing and continuing a knowingly false criminal charge against Plaintiff without probable cause, e) making a Part 83 Complaint of moral unfitness against Plaintiff to the New York State Education Department, causing her administrative certification to be "on hold" and f) deliberately misstating Plaintiff's District job duties to the New York State Education Department, also causing her administrative certification to be denied, the District discriminated against Plaintiff on account of her religion, in violation of Section 296 et seq. of the New York State Human Rights Law.

95. Brooks and Walsh actively participated in any one or more of the foregoing discriminatory adverse employment actions against Plaintiff and as such were aiders and abettors of such discrimination.

96. By reason of the foregoing, Plaintiff has sustained financial loss, severe humiliation, pain, suffering, mental anguish, emotional distress and loss to reputation.

97. By reason of the foregoing Plaintiff has been damaged in a sum to be determined at trial but in no event less than THREE MILLION DOLLARS ($3,000,000.00).

### AS AND FOR A THIRD CLAIM AGAINST THE DISTRICT: TITLE VII RETALIATION

98. Plaintiff repeats and realleges Paragraphs 1 through 97 as though set forth at length herein.

99. The foregoing adverse employment actions undertaken by the District and Brooks in a) denying Plaintiff tenure, b) terminating her employment, c) deliberately interfering with other employment opportunities, d) commencing and continuing a knowingly false criminal charge against Plaintiff without probable cause, e) making a Part 83 Complaint of moral unfitness against Plaintiff to the New York State Education Department, causing her administrative certification to be "on hold" and f) deliberately misstating Plaintiff's District job duties to the New York State Education Department, also causing her administrative certification to be denied, were undertaken against Plaintiff in retaliation for engaging in the protected activities of making a complaint of discrimination/harassment on account of religion to District authorities, of complaining of the same in a Notice of Claim served upon the District and in a charge filed with the United States Equal Opportunity Employment Commission, all in violation of the anti-retaliation provisions of Title VII, 42 U.S.C,§2000-e et seq.

100. By reason of the foregoing, Plaintiff has sustained financial loss, severe humiliation, pain, suffering, mental anguish, emotional distress and loss to reputation.

101. By reason of the foregoing Plaintiff has been damaged in a sum to be determined at trial but in no event less than THREE MILLION DOLLARS ($3,000,000.00).

### AS AND FOR A FOURTH CLAIM AGAINST ALL DEFENDANTS: RETALIATION IN VIOLATION OF SECTION 296 ET SEQ. OF THE EXECUTIVE LAW (NEW YORK STATE HUMAN RIGHTS LAW)

102. Plaintiff repeats and realleges Paragraphs 1 through 101 as though set forth at

length herein.

103. The foregoing adverse employment actions undertaken by the District in a) denying Plaintiff tenure, b) terminating her employment, c) deliberately interfering with other employment opportunities, d) commencing and continuing a knowingly false criminal charge against Plaintiff without probable cause, e) making a Part 83 Complaint of moral unfitness against Plaintiff to the New York State Education Department, causing her administrative certification to be "on hold" and f) deliberately misstating Plaintiff's District job duties to the New York State Education Department, also causing her administrative certification to be denied, were undertaken against Plaintiff in retaliation for engaging in the protected activities of making a complaint of discrimination/harassment on account of religion to District authorities, in a Notice of Claim served upon the District and to the United States Equal Opportunity Employment Commission, all in violation of the anti-retaliation provisions of Section 296 et. Seq. of the New York State Executive Law.

104. Brooks and Walsh actively participated in any one or all of the foregoing retaliatory actions and as such were aiders and abettors of such retaliation.

105. By reason of the foregoing, Plaintiff has sustained financial loss, severe humiliation, pain, suffering, mental anguish, emotional distress and loss to reputation.

106. By reason of the foregoing Plaintiff has been damaged in a sum to be determined at trial but in no event less than THREE MILLION DOLLARS ($3,000,000.00).

### AS AND FOR A FIFTH CLAIM AGAINST THE DISTRICT AND BROOKS: MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT, PURSUANT TO 42 U.S.C. §1983

107. Plaintiff repeats and realleges Paragraphs 1 through 106 as though set forth at length herein.

108. At all times relevant herein, Defendant Brooks was a state actor as defined by law.

109. Defendant Brooks was a policy maker of the District with respect to the decision, made on behalf of the District, to swear to a false Supporting Deposition by which he commenced and continued a criminal proceeding against Plaintiff, without probable cause, charging her with unauthorized use of a computer, in violation of Section of the New York Penal Law §156.05, an A misdemeanor, which proceeding was terminated without a conviction.

110. As a result of the foregoing prosecution Plaintiff's liberty was restricted in that she handcuffed and shackled upon arrest and was subject to the jurisdiction of the Court and was compelled to appear in Court approximately 10 times over the course of a year.

111. By reason of the foregoing, Defendants District and Brooks violated Plaintiff's fights to be free from unreasonable search and seizure as protected by the Fourth Amendment to the Constitution of the United States.

112. By reason of the foregoing, Plaintiff has sustained financial loss, severe humiliation, pain, suffering, mental anguish, emotional distress and loss to reputation.

113. By reason of the foregoing Plaintiff has been damaged in a sum to be determined at trial but in no event less than THREE MILLION DOLLARS ($3,000,000.00).

WHEREFORE, Plaintiff demands JUDGMENT

AGAINST THE DISTRICT, ON THE FIRST, SECOND, THIRD, FOURTH and FIFTH CLAIMS for compensatory damages in the amount of THREE MILLION DOLLARS ($3,000,000.00); and

AGAINST DEFENDANT BROOKS, ON THE SECOND, FOURTH and FIFTH CLAIMS for compensatory damages in the amount of THREE MILLION DOLLARS and for

punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00); and

AGAINST DEFENDANT WALSH, ON THE SECOND AND FOURTH CLAIMS for compensatory damages in the amount of THREE MILLION DOLLARS ($3,000,000.00) and for punitive damages in the amount of ONE MILLION DOLLARS,

TOGETHER with attorneys' fees, the costs and disbursements of this action and such other further and different relief as to the Court seems just and proper.

Dated: October 4, 2023
White Plains, New York

GOULD & BERG, LLP

By: _____
Jane Bilus Gould (Bar Roll Number 509493)
Attorneys for Plaintiff Dara Kaplan
222 Bloomingdale Road
White Plains, New York 10605
914-397-1050
jbgould@gouldberglaw.com